# DRIVER *v.* BRUNEMER.

EQUITY; LACHES; TRUSTEES; ACCOUNTING; PARTIES; SECRET PROFITS; DISTRIBUTION; INTEREST.

1. Delay—for nearly eighteen years, to bring suit for an accounting and other relief, by persons induced by misrepresentations to become members of a syndicate for the purchase of land, is excusable, where trust relations existed between the parties and the fraud was carefully concealed. (Citing *George* v. *Ford,* 36 App. D. C. 315.)

2. On the removal for misconduct of trustees holding title to lands purchased by a syndicate, the appointment of new trustees is necessary and proper.

3. Members of a syndicate who organize a new syndicate to which they sell land, and who represent to the subscribers for shares therein that all the members are on an equal footing, when in fact large and secret profits were made by the members of the old syndicate on the sale, are accountable to the innocent members of the new syndicate therefor. (Citing *Ferguson* v. *Bateman,* 1 App. D. C. 279; *Las Ovas Co.* v. *Davis,* 35 App. D. C. 372.)

4. Any one or all the members of a syndicate organized for the purchase and resale of land, who participate in secret profits to the exclusion of others, may be made parties to a suit for an accounting. (Citing *Las Ovas Co.* v. *Davis, supra.*)

5. The purchase of shares by members of a syndicate, in good faith and for a valuable consideration, from other members who have received them as their part of the proceeds of illegal and secret profits, and who have been decreed to account therefor, will not be rescinded, but such purchasers are entitled to a proportional share in the distribution of the proceeds of the syndicate on final settlement, and to share in the distribution of the proceeds of the recovery of secret

profits in proportion to the actual price paid for the additional
shares, together with the assessments paid, if any.

6. Members of a syndicate for the purchase and resale of land, who have
been decreed to account to comembers for secret profits, are entitled
to participate in the final distribution as full shareholders, after
first deducting from each share the proportion of secret profits prop-
erly chargeable thereto.

### On Rehearing.

7. That members of a syndicate settling land to a new syndicate at a
price which would make a secret profit to the former of $18,500, if
the entire fifty-seven shares had been taken up by new cash sub-
scribers, were able to secure but ten of the latter, and took the re-
maining forty-seven shares themselves, does not limit their liability
on accounting for the secret profits to $5,000 cash received, instead
of the sum of $18,500.

8. In view of the delay of the complainants in filing their bill for an
accounting of secret profits received by the defendants as trustee in
a land transaction, this court directed that interest be allowed only
from the date of the filing of the bill, and not from the date of the
transaction.

No. 2414.   Submitted January 10, 1913.   Decided February 25, 1913.

HEARING on an appeal by the defendants from a decree of the
Supreme Court of the District of Columbia overruling demur-
rers to an amended bill of complaint in a suit for an accounting
and for other relief.          *Modified and affirmed.*

The COURT in the opinion stated the facts as follows:

The original bill in this cause was filed June 1, 1909, by
the appellees, James H. Brunemer, William W. White, Cassius
M. Park, Mrs. Cassius M. Park, and Jennie W. Davenport,
against the appellants, George W. Driver, Edwin C. Fitz Si-
mons, and Peter J. Menhan, and other defendants. This is
not in the record, having been substituted by an amended bill
filed November 3d, 1909.

The allegations of the amended bill, in substance, are that,
in the year 1891 and in January, 1892, defendants Fitz Si-

mons and Keleher were employees of the government in the city of Washington, Fitz Simons being also a real estate agent; and both were well known and had the reputation of men of integrity and good judgment in the matter of land values. They were members of a syndicate of eight persons, of whom defendant Driver was one also, that had been organized by D. D. Stone, a real estate broker. Stone had organized the syndicate for the purpose of enabling him to dispose of a tract of land in the District of Columbia at a fictitious price. That said Stone had purchased said land for less than $10,000, and the same was subject to a first deed of trust for $6,000. That to enhance the apparent value, he caused a fictitious second trust to be placed thereon purporting to secure notes to one Edward Burkett in the amount of $7,600 for money purporting to have been lent by him. That Burkett was a young man without means, a clerk of Stone's, and had not in fact advanced a dollar on said land. That said transaction was for the purpose of deception and fraud in inducing subscribers to a syndicate for the purchase of said land. Said land, 18 acres in area, was known as Wesley park. That said Stone proceeded to organize a small syndicate to purchase said land for $21,600, which he represented to be its cost. That a cash payment of $7,000 was obtained, the land remaining subject to the first and second trusts aforesaid. That sometime thereafter defendant Driver discovered the deceit that had been practised by Stone in the matter of the Burkett notes and trust, and complained to Stone and other promoters of said syndicate. That thereupon said Stone proposed to Driver and others that a new syndicate be formed among government employees to purchase said land, enabling the first syndicate to make a profit. That with this intent defendants Driver, Keleher, Fitz Simons, and others confederated together to form a new syndicate, of which complainants and others were induced to become members by their representations. That said promoters were authorized to sell said land at a less sum than $40,000, and it was agreed that upon a sale for $40,000, they and their confederates should receive a large part of said $40,000 as profits to be paid out of

the money contributed to the new syndicate. That said defendants, acting in combination with the purpose to defraud complainants by inducing the purchase of said land at a price far above its cost and value, represented that they and others would also be purchasers of said land on the same terms with other members of the new syndicate, and would pay the same price for their shares, and all profits should be equally shared. Said defendants studiously concealed that they were interested adversely, and were to derive large profits by the organization of the new syndicate, which were to come from the money contributed by complainants, out of the purchase of their shares. Plaintiffs were ignorant of any interest of defendants in said land, and they stated that they had none. Relying on these statements implicitly and on the judgment of defendants, and their representation that the land could not be purchased for less than $40,000, which was a cheap price, and that it was offered at this low price because it was the last holding of a large syndicate which desired to sell because they were compelled to close up their affairs, plaintiffs agreed to become members of the new syndicate. Defendants represented that $28,-400 of the cost price would have to be paid in cash, and that trusts aggregating $11,600 would be placed on the land which would be paid off by *pro rata* assessments upon the members. They represented that the new syndicate would be organized on the basis of fifty-seven shares at $500 per share. That plaintiffs and others relying on these representations did subscribe for shares and paid the said sum of $500 per share, having no reason to doubt the truth thereof.

That plaintiffs were ignorant of the fact that the promoters of the syndicate, including the three defendants Keleher, Fitz Simons, and Driver, had or would have any interests adverse to those of your complainants and others, and that the purpose of the syndicate was to unload the property upon complainants at a fictitious price, which would enable the owners of the land, by the use of the money of plaintiffs, to buy the land of themselves at a price that would realize for them a large profit by the deception practised on your complainants, and would en-

able such of them as took shares in the syndicate to acquire the same free of cost to themselves, out of the illegal profits realized from complainants and others joining the syndicate on their faith and integrity in the fair dealing of its promoters.  That plaintiffs but for the deception practised, would not have taken an interest in the syndicate.

That your complainants and others similarly situated paid $500 per share, as aforesaid, and with the money obtained the defendants purchased of themselves and the said syndicate members acting in co-operation with them the land agreed to be bought.  The title was taken in the name of Edwin C. Fitz Simons and Timothy D. Keleher, trustees, by a deed from David D. Stone and George W. Driver, trustees.  Said real estate being known and described as lots 10, 11, 12, and part of lot 9 in Murdock's part of the "Friendship" tract.  That said trustees subsequently divided said lands into blocks 1 to 11 inclusive in the subdivision known as Wesley park; the same being recorded.  That later Timothy D. Keleher resigned as trustee, and the defendant Peter J. Meehan was substituted in his stead.

That the plaintiff John H. Brunemer is the holder of an interest as tenant in common of said land by reason of ownership of ——— certificates.  Plaintiff W. W. White a two fifty-sevenths interest as tenant in common by person of the ownership of certificates representing shares; plaintiff C. M. Park a one fifty-seventh interest by reason of the ownership of a certificate; plaintiff Mrs. C. M. Park a one fifty-seventh interest by reason of the ownership of a certificate, and plaintiff Davenport a five and seven-eighths fifty-seventh interest by reason of the ownership of certificates representing five seven-eighths shares.  Copies of certificates are attached as exhibits.

That some months after the organization of the present syndicate, there came a time of financial stress which lasted for several years.  That plaintiffs became of the opinion that the promoters had been oversanguine and had overvalued the real estate, but continued to have confidence in their uprightness and integrity, by which they had been induced to become mem-

bers of the syndicate, and by reason of said confidence made no investigation into the organization of the syndicate. That in the spring of 1907 certain statements made by a former member of the syndicate to plaintiffs caused them to suspect that untrue representations had been made by defendants, and caused them to consult attorneys with reference to the matter. That the records in the office of the recorder of deeds were examined by said attorneys, and thereafter other investigations were conducted by said attorneys for the purpose of ascertaining the facts with reference to the organization and promotion of the syndicate. That the defendant Fitz Simons was approached with reference to what, if any, profit had been made by reason of the organization of the syndicate, but no information was obtainable from him except with reference to matters of public record or that related to his accounts subsequent to his trusteeship. That by means of co-operation between complainants and their attorneys, they discovered that the several representations herein recited as having been made to the complainants were untrue, some time in the year 1908, together with certain documentary proof thereof, and that, acting with due and ordinary diligence and pursuing such means of information as was thought proper, expedient, and necessary until there was accumulated evidence that in the opinion of plaintiffs satisfied them that the defendants Keleher, Fitz Simons, and Driver and others had perpetrated a fraud upon them in the organization of the syndicate, and had worked off on complainants at a high and fictitious price land of much smaller value.

That among the shareholders in said syndicate was one Galen L. Tait. That plaintiffs and others continued to pay their assessments on the property of the syndicate as the same became due. That said Galen L. Tait is a real estate operator and, acting in conjunction with his partner, Augustus Omwake, conceived a plan to acquire the property of the Wesley Park Syndicate. That to this end he interested at least one of the two trustees then controlling the property of the syndicate, and through said trustee induced and brought about the sale of the syndicate property to himself and Omwake at a figure far

below the real value of the property, namely the sum of $20,-000. That at this time the real estate was divided into building lots. It was agreed between the defendants Tait and Omwake that the property should be sold to the latter for a cash payment of only $1,500, and that the payment of the remainder should be deferred over a period of seven years with the privilege of releasing any lot on the payment of $150 per lot. That, pursuant to this agreement, which had for its object a sale of the property at a price that would net its promoters a large return without risk, the real estate herein mentioned was, by agreement made May 1, 1906, sold by Edwin C. Fitz Simons and Peter J. Meehan, trustees, to Galen L. Tait and Augustus B. Omwake, on payment of $1,500 and the execution of notes for $18,500 and a deed of trust to secure the same; said notes to run from one to seven years from May 24, 1906; a further part of said agreement being that ten lots should be released on the payment of $1,500 and other lots on the payment of $150 per lot. This agreement was the result of collusion between said Tait and Omwake and either or both of the syndicate trustees, and was for the purpose of enabling said Tait and Omwake to pay for the property out of the sales of the same. That thereafter said Tait and Omwake put the said lots on sale and disposed of a number of them at prices largely in excess of the price at which the syndicate trustees had sold or purported to sell the same. Plaintiffs further aver that, owing to the financial depression, the sale of the lots did not proceed as rapidly as anticipated, and, in further pursuance of the scheme to enable the property to be sold at a large profit, when the notes for the purchase money fell due, plaintiffs aver that they were extended by said trustees who acted without consultation with and without reference to the wishes of the syndicate members.

Plaintiffs further aver that, by reason of the matters and things hereinbefore set forth, they have utterly lost faith and confidence in their trustees Fitz Simons and Meehan, and that they are entitled to have the sale of the property sold to Tait and Omwake vacated and canceled, except as to sales to innocent purchasers without notice, and to have discovery and account-

ing of their trustees, and to have said Fitz Simons and Meehan removed as trustees, and to have the shares or interest in the said syndicate held by Driver, Fitz Simons, Meehan, and Tait canceled in default of a full accounting and settlement.

The prayers are: First, that the defendants Driver, Fitz-Simons, and Keleher be required to discover and set forth the full and complete history of their transactions with the Wesley Park Syndicate, and to state what arrangement or agreement there was between them and the former syndicate owning the land with relation to the formation of the present syndicate.

Second: That the defendants Fitz Simons, Tait, Omwake, and Meehan be required to discover and set forth the full history of the transaction whereby the real estate was conveyed to said Tait and Omwake, and to state who were interested with them.

Third: That the defendants Fitz Simons, Meehan, Tait, and Omwake be enjoined pending this suit and perpetually thereafter, from disposing of or encumbering any of the real estate herein described without an order of this court.

Fourth: That the said defendants be enjoined from disposing of their interests in the syndicate or encumbering the same in any way, and that their said interests be canceled.

Fifth: That the defendants Fitz Simons, Driver, Meehan, Keleher, Omwake, and Tait be required to account to plaintiffs for the amount due by them on account of the matters and things hereinbefore set forth.

Sixth: That the defendants Fitz Simons and Meehan be removed as trustees of the said real estate.

Seventh: That the sale of the real estate herein described by Fitz Simons and Meehan, trustees, to Tait and Omwake, be set aside except so far as to sale of lots in the subdivision hereinbefore described have been made heretofore, and that said Tait and Omwake be required to transfer, assign, and convey to the trustees for the Wesley Park Syndicate all the notes, contracts, deeds, and other papers or things of value held by them resulting from the sale of some of the lots herein described.

Eighth: For general relief.

Tait and Omwake answered the original bill, but did not answer the amended bill, and have not appealed from the decree.

Defendant Driver demurred to the amended bill, and, his demurrer having been overruled, answered the same denying each and all of the allegations of fraud and misrepresentation charged therein.

Defendants Cable, Merry, and C. C. Tyler answered the bill denying any knowledge of the facts alleged, and asserting their confidence in the trustees.

Edwin C. Fitz Simons answered denying the allegations of fraud and misrepresentation.

Peter J. Meehan answered making a general denial of the allegations of fraud and misrepresentation.

An amendment to the bill of complaint was filed November 11, 1910, elaborating the allegations of fraud and misrepresentation in the first amended bill. Replication having been filed, depositions were taken, and the cause came on for hearing on the 20th of November, 1911.

The court entered a decree as follows: (1) That Fitz Simons and Meehan be removed as trustees of the syndicate, and are directed to surrender all books, records, papers, and certificates of the Wesley Park Syndicate to their successors.

(2) That Mason N. Richardson and Simon Lyon be appointed trustees with all the rights and powers vested in said Fitz Simons and Meehan as trustees, and such further powers as may be conferred upon them as trustees by virtue of this decree or further orders of this court.

(3) That the defendants Driver, Fitz Simons, and Meehan are jointly indebted unto Mason N. Richardson and Simon Lyon as trustees for James H. Brunemer and other original purchasers, or subsequent transferees of or from original purchasers for money, of ten shares in all in November and December, 1891, in the present Wesley Park Syndicate of fifty-seven shares in the sum of $7,465, being the amount due with interest at the rate of 6 per cent per annum from December, 1891, by the aforesaid Driver, Fitz Simons, and Meehan, arising out of

the fact that they are found to have received moneys from their associates purchasing ten shares of the Wesley Park Syndicate of fifty-seven shares on the basis of $40,000 for the land purchased by said syndicate, whereas the real value of said land is found to have been $21,600, and when the sum so found due is collected, the said Richardson and Lyon as trustees shall hold the same for distribution to the parties entitled thereto, under the directions of the court.

(4) That Driver, Fitz Simons, and Meehan are hereby adjudged and decreed to hold the shares in the Wesley Park Syndicate in their names on the books of the Wesley Park Syndicate, subject to a lien in favor of Mason N. Richardson and Simon Lyon as trustees for the sum of $7,465, found due by this decree from these defendants. In the event said sum be not paid by the 30th day of January, 1912, the trustees are directed to hold said shares for the use and benefit of James H. Brunemer and other subscribers or their assignees to the aforesaid ten shares, and sell or dispose of the same under further orders of this court, and to credit the net proceeds of said sale on the decree herein rendered against Fitz Simons, Driver, and Meehan, and execution for the balance, together with the costs of this suit, said costs to be taxed against Driver, Fitz Simons, and Meehan, and shall issue as at law.

(5) That there be referred to the auditor the matter of the amount of the fees to be paid Charles H. Merrilat and Mason N. Richardson for their services as attorneys in this cause, and the funds out of which same shall be paid.

(6) That W. W. White, holder of one share, James H. Brunemer, holder of two and seven-eighths shares, and Jennie Davenport, holder of five and seven-eighths shares, acquired from or through members of the Wesley Park Syndicate, are entitled to rescind the contracts whereby they acquired said shares, and said contracts are hereby rescinded; and it is further ordered that Driver, Fitz Simons, and Meehan are liable to W. W. White as to one share, James H. Brunemer as to two and seven-eighths shares, Jennie Davenport as to five and seven-eighths shares in Wesley Park Syndicate of fifty-seven shares,

and that so much of this cause as relates to the aforesaid shares be referred to the auditor with directions to ascertain the amounts paid by W. W. White, James H. Brunemer, and Jennie Davenport on account of said shares, together with any sum or sums received by them on account of dividends on said shares; and the auditor is directed to allow simple interest in stating the account in favor of plaintiffs. Driver, Fitz Simons, and Meehan are decreed jointly and severally liable for the amounts found by the auditor to have been paid to White, Brunemer, and Davenport, and entitled on their part to hold said shares for their use and benefit with right to contribution as between Driver, Fitz Simons, and Meehan for any and all moneys paid by them, or either of them, pursuant to this decree on account of the rescission of the contracts.

(7) That the extension of time granted to Tait and Omwake, within which to pay the balance of deferred purchase money notes, be set aside, and that the said trustees are directed to make demand of Tait and Omwake that they pay within sixty days the amount due, principal and interest, at this date on account of said deferred purchase money deed of trust notes.

That, in the event said demand be not complied with, Mason Richardson and Simon Lyon are directed to accept a reconveyance of the property conveyed to Tait and Omwake, less certain enumerated lots hereinafter released from the effect of this decree, provided that they shall have performed the condition of payment of a certain sum of $1,800 as set forth hereafter in this decree; and in the event of the performance of said condition and said Tait and Omwake shall elect to reconvey, said trustees are directed to cancel and release the purchase money deed of trust notes.

That, upon the payment to Richardson and Lyon, trustees, within sixty days, of the sum of $1,800, by Tait and Omwake, said trustees are vested with authority either themselves to hold, or to sell and convey as they deem best, lots 1, 25, 26, 27, 28, 32 and 33 in Block 4 of Wesley park, and said trustees are directed to apply said sum of $1,800 to the payment and discharge of all unpaid taxes, general and special, on the prop-

erty, including said seven enumerated lots thereupon to be hereby released from the lien of said deed of trust heretofore given, and from the operation of this cause. This authority to retain title or sell upon condition shall be and is in operation forthwith in respect of whether Tait and Omwake shall within sixty days pay up the amount now due on the purchase money notes now outstanding, or shall reconvey the balance of the lots remaining over and above the twenty-four and seven lots herein specifically enumerated. In the event said Tait and Omwake shall perform the conditions and elect to pay the full amount now due by them on the outstanding purchase money notes, the balance remaining of said $1,800, over and above the amount necessary to defray the taxes hereby ordered to be paid, shall be credited on said amount due by said Tait and Omwake.

That, in the event that neither sum of $1,800 be paid and the reconveyance authorized thereupon be made, nor demand aforesaid for payment of overdue deed of trust notes be paid or met by said Tait and Omwake, Richardson and Lyon, trustees, are directed to take immediate steps to effect a foreclosure of the deed of trust securing said purchase money notes, so far as said trust has not been released, and they are empowered and directed in the event said real estate does not bring at foreclosure proceedings the amount due, to buy in the real estate for the use and benefit of the Wesley Park Syndicate.

That it is expressly ordered that the issue of this suit does not effect title to lots released from deed of trust securing purchase money notes, released before the date of this decree, said lots being as follows: 21, 22, 23, Block 3; 29, 30, 31, Block 4; 4, 5, 6, 7, 8, 9, 12, and 13 in Block 5; 3 and 4, Block 6; 32, 33, 34, 35, Block 7; 2, 3, 12, and 13 in Block 9, in said Wesley Park. And that as to these twenty-four enumerated lots, the bill be and the same is hereby dismissed.

Control of the cause is reversed by the court as to so much of the matters and things provided by this decree that are not finally passed upon, but are decreed to be hereafter performed, and report thereof made to the court, said decree being ex-

pressly adjudged final, however, as to the removal of Fitz Simons and Meehan, and the appointment of their successors, and as to the amount for which Driver, Fitz Simons, and Meehan are found liable on account of ten shares sold in the original organization of Wesley Park Syndicate of fifty-seven shares.

From this decree Driver, Fitz Simons, and Meehan appeal.

*Mr. Henry E. Davis, Mr. Simon Lyon,* and *Mr. R. B. H. Lyon* for the appellants.

*Messrs. Kappler & Merillat* and *Mr. Mason N. Richardson* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The substantial allegations of the bill were sustained by the evidence, the material facts of which are here stated. It appears that in 1890 one D. D. Stone organized a syndicate of eight persons to purchase the tract of 18 acres of land, known as Wesley Park. The land was then encumbered by a trust for $6,000, the validity of which has not been questioned. A second trust was executed to secure payment of certain notes amounting to $7,600 executed to one Burkett, a clerk in Stone's office, which were indorsed to Stone. No money was advanced by Burkett, and the transaction was fictitious.

On November 1, 1890, the land, subject to the aforesaid encumbrances, was conveyed to D. D. Stone and George W. Driver, trustees, for a syndicate of purchasers. The purchase price named was $21,600, of which $13,600 were represented by the trusts aforesaid, leaving $8,000 to be paid in cash. Seven persons joining with Stone composed this syndicate, contributing $1,000 each thereto. They were Timothy D. Keleher, Abel Hart, David D. Stone, Genevieve Yeager; Theodore Davenport, H. J. Rounds, and Edwin C. Fitz Simons. Peter J. Meehan subsequently bought the share of D. D. Stone.

The defendants and some other members of this syndicate of eight conceived a plan to raise a second syndicate for the purchase of this land. The value of the land was fixed at $40,100, of which the unpaid trusts represented $11,600. The number of shares to be represented in the new syndicate were fifty-seven. Dividing the part of the purchase price to be paid in cash— $28,500—by fifty-seven made the face value of each share $500. November 1, 1891, Stone and Driver, trustees, conveyed the land to Edwin C. Fitz Simons and Timothy D. Keleher, trustees for the new syndicate, subject to trusts aforesaid of $11,600. But ten cash subscribers, for one share each, could be secured. These were Cassius M. Park, Judson Knight, Francis H. McKevitt, Sarah Klock, James H. Brunemer, Thomas H. Smith, Charles I. Kent, and J. H. Busher, each of whom paid $500 to the trustees.

The following account of the transaction was sent to the members of the syndicate of eight by Fitz Simons and Keleher, trustees:

"Memoranda of Sale of Property Adjoining Methodist University Site."

| | |
|---|---:|
| Sold to E. C. Fitz Simons and T. D. Keleher, Trustees | $40,100 |
| Cost | 21,600 |
| Profit | $18,500 |
| New Syndicate formed consisting of 57 shares at $500 | $28,500 |
| Deeds of Trust on Property | 11,600 |
| | $40,100 |

### Receipts.

| | |
|---|---:|
| Cash for 10 shares | $5,000 |

The unsold shares in the new syndicate consisting of forty-seven were divided between the members of the syndicate of eight, alloting to each, five and seven-eighths shares, which represented their respective interests in the land.

The ten new subscribers had confidence in the members of the old syndicate who induced them to subscribe; were unaware that any profits had been made in the sale, and believed that all parties were on an equal footing. It appears that the syndicate of eight received the benefit of the cash contributed by the new subscribers. It was used to pay off part of the mortgage, but the first syndicate members, instead of contributing to the payment in money, received the benefit of the same by way of credits to each upon the amount of the assessment that he should have paid in full. Moreover, $725 were charged as commissions, but to what person paid, or on what ground, does not appear. The trustees appear to have kept no book account of these transactions, or of others relating to the trust, from which information could have been obtained by the beneficiaries, had their suspicions been aroused. They were in possession of no information to put them upon inquiry, or to shake their confidence in the trustees and others of the syndicate of eight, upon whose representations they had entered into the new syndicate.

The complainants, who sue on behalf of themselves and others similarly situated, held shares as follows: Brunemer, one share by subscription, one share by purchase from Keleher, and one and seven-eighths shares by purchase from the estate of Abel Hart; W. W. White, two shares by purchase from Hart's estate; Cassius M. Park, one share by subscription; Mrs. C. M. Park, one share by purchase, apparently from one of the cash subscribers; Jennie W. Davenport, five and seven-eighths shares by purchase from her husband, Theodore Davenport, who was a member of the syndicate of eight. Hart and Stone are dead. Keleher has disposed of his shares, and is out of the jurisdiction, as are others of the syndicate of eight. None of the other subscribers to the new syndicate have made themselves parties. With this brief statement of the facts, the several assignments of error will be considered in their order.

1. Although years have elapsed since the formation of the new syndicate, we do not find that the delay in ascertaining

the facts and bringing this suit is inexcusable. The circumstances of the trust relations of the parties, the confidence of the plaintiffs, and the concealment of the fraud, furnished reasonable excuse for the delay. *George* v. *Ford,* 36 App. D. C. 315–332; see also *New Sombrero Phosphate Co.* v. *Erlanger* L. R. 5 Ch. Div. 73–117, 46 L. J. Ch. N. S. 425, 36 L. T. N. S. 222, 25 Week. Rep. 436.

2. The conduct of the trustees has been such that their removal was necessary and proper in the interest of all concerned in the affairs of the syndicate. Having removed them, it was, of course, necessary to appoint others.

3. The actual profits made by the syndicate of eight to which the three defendants belonged, in the resale of the land to the new syndicate organized by them for the purpose, was $18,500. This profit was unlawfully made; and justice and equity demand that they should be held accountable for it: *Ferguson* v. *Bateman,* 1 App. D. C. 279–296; *Las Ovas Co.* v. *Davis,* 35 App. D. C. 372–381. The proportion of this profit received by the three defendants was $6,937.50, instead of $7,465, as recited in the decree; which sum they were declared liable for to the subscribers to the new syndicate, and ordered to pay to the newly appointed trustees, with interest at the rate of 6 per cent per annum from December 1, 1891, for distribution to the parties entitled thereto under the direction of the court.

There was no error in holding that the other members of the syndicate were not necessary parties to the suit. Either one or all of the parties who participated in the secret profits could be sued. *Las Ovas Co.* v. *Davis,* 35 App. D. C. 372–379; *Davis* v. *Las Ovas Co.* 227 U. S. 380, 57 L. ed. —, 33 Sup. Ct. Rep. 197; *Old Dominion Copper Min. & Smelting Co.* v. *Bigelow,* 188 Mass. 315–329, 108 Am. St. Rep. 479, 74 N. E. 653. So much of the decree as awards recovery against the defendants for their share of the secret profits is correct, but it must be modified and corrected so as to make the principal amount decreed to be paid $6,937.50.

4. The fourth paragraph of the decree declaring an equitable lien upon the defendants' shares and interests in the syndicate

land, to the extent of the recovery before ordered, must also be modified and amended so as to make the amount of total lien $6,937.50, with interest, instead of $7,465, as therein recited.

5. The sixth paragraph of the decree relates to the shares of plaintiffs acquired not by original subscription, but by purchase of shares that had been issued to certain members of the syndicate of eight, of which, it will be remembered, each received five and seven-eighths shares in the new syndicate. Of these, White holds one share, Brunemer two and seven-eighths, and Jennie Davenport five and seven-eighths shares. The contracts by which they acquired these shares are declared rescinded. The defendants are declared liable to plaintiffs, respectively, for these shares, and reference is made to the auditor to ascertain the amounts paid by each of the aforesaid parties on account of their purchase of said shares, and assessments thereon, for which, with interest, the said defendants are declared jointly and severally liable.

We are of the opinion that so much of the decree as is contained in paragraph six, which rescinds those purchases, is without support in the pleadings and evidence. The shares were not purchased from the defendants or either of them, and the parties with whom they made their contract of purchase are not before the court. Moreover, the defendants have been decreed to pay to the trustees their entire proportion of the profits received, and this recovery is in addition to that. Their burden will have been discharged when they comply with the decree requiring them to account therefor to the trustees. As it appears that White and Brunemer, having confidence in the representations made as to the purchase price and value of the land, purchased their said additional shares in good faith and for a valuable consideration, they are entitled to a proportional share in the distribution of the proceeds of the syndicate in the final settlement of its affairs. It seems equitable also that they should share in the distribution of the proceeds of the recovery of the secret profits decreed against the defendants, in proportion to the actual price paid for the additional shares together with the assessments paid them, if any, which can be ascer-

tained in the accounting before the auditor, subject, however, to a preference of such of the shares of the ten subscribers as may be presented to the auditor. As to the shares held by Jennie Davenport the situation is different. Those shares were issued to her husband, Theodore Davenport, who was a member of the syndicate of eight, and shared in the profits of the same in the same manner as the defendants and other members did. She is not shown to be a bona fide purchaser from him for a valuable consideration. She as the assignee, and, standing in the shoes of one of the wrongdoers, is not entitled to share in the money ordered paid by the defendants as their share of the proceeds of the wrong. The most that she is equitably entitled to is to share in the final distribution, when the lands of the syndicate shall have been sold and the net proceeds thereof ascertained. As the final account must be taken by the auditor under the direction of the court, it is proper to indicate as far as possible the manner in which final distribution shall be made.

(a) The ten cash subscribers and their assignees are entitled to preference in the distribution of the amount decreed herein to be paid by the defendants as their part of the secret profits. If all of the ten shares are presented and represented in the accounting, the entire recovery from the defendants should be divided equally between the holders of the said shares according to the number held by each. If all be not represented, then one tenth of the said fund shall be allotted to each of said shares. If all of said shares be not represented, the remainder of said fund shall first be shared in by the plaintiffs Brunemer and White, and by such others as may hold by bona fide purchase shares derived from members of the syndicate of eight, prior to the institution of this suit, who may present the same to the auditor with the necessary proof of valuable consideration and good faith. None of such shareholders shall receive allotment as the owner of a full share, but such proportion only as the purchase price paid by him for each share and any assessment paid thereon by him bear to the face value of a single share, together with interest from time of purchase and pay-

ment. If there be a part of said fund remaining after the distribution as aforesaid, then the same shall be returned to the said defendants.

(b) The members of the syndicate of eight and their assignees, who may not be able to prove bona fide purchase for a valuable consideration as hereinbefore provided, are not to be excluded from a participation in the proceeds to be derived from the sale of the remaining land of the syndicate when final distribution shall be made. But each share so presented shall have first deducted therefrom the proportion of secret profits properly chargeable thereto, with interest, as heretofore determined.

(c) The defendants, after performing the decree heretofore made as to their share of the secret profits, shall be entitled to participate in the final distribution as full shareholders. But if any money shall have been returned to them from the fund heretofore ordered to be first distributed, the same shall first be deducted from their shares in the final distribution.

6. The paragraph of the decree providing for reference to the auditor is unobjectionable. The remaining paragraphs of the decree affect Tait and Omwake, who have not appealed. Defendants are not affected thereby and have nothing to complain of therein.

The decree appealed from is right in the main, and with the modifications indicated, will be affirmed. The cause will be remanded to the court below with directions to enter a modified decree not inconsistent with this opinion.

The costs in this court will be taxed against the appellants.

*Modified and affirmed.*

Upon a motion for rehearing by the appellants, Mr. Chief Justice SHEPARD delivered the opinion of the court:

It is unnecessary to consider but one ground of the motion. It is contended that the court was in error in finding that the members of the syndicate of eight—called herein the old syndicate for convenience—made a profit of $18,500 in the sale of the land to the new syndicate. Admitting that there would have

been such a profit had they succeeded in their attempt to se-cure new cash subscribers for the entire fifty-seven shares, their contention is that, because only ten new subscribers were secured at $500 each, and the members of the old syndicate were com-pelled in consequence to take the remaining shares themselves, the actual profit made in the sale of the land was only $5,000.

There is no reasonable foundation for this contention.

The sale was made by the old syndicate to the new, of land costing $21,600, at a valuation of $40,100, and the shares of the syndicate were fixed at $500 each. The new subscribers, ten in number, paid $500 each, receiving ten shares. The old syndicate members, having failed to procure subscribers to the remaining forty-seven shares, were compelled to take those themselves, or else abandon their scheme. Preferring not to abandon the scheme, they divided the shares equally, appro-priating to themselves also the $5,000 obtained on the ten new subscriptions.

Land costing them $21,600 was thus capitalized at $40,100, making the profit in the sale of the land amount to $18,500. Having failed to obtain the remaining sum of $13,500 from new subscribers as expected, they took it in shares on the basis of the new capitalization. The memorandum of the transaction furnished to each member of the old syndicate, but kept from the knowledge of the new subscribers, shows that they so understood it. Had there been a rescission of the cash subscriptions of the ten new members, on account of misrepresentations, the old syndicate would have the land back, charged only with the $5,-000 and interest. In other words, all of the parties would have been put *in statu quo*. But this was not the scheme of the bill. The new subscribers elected to hold their shares, and sued to compel the old syndicate members to account for the unlawful profit. The new syndicate remains undissolved, and the title to the land, is still in it.

The members of the old syndicate, having made this illegal profit, are decreed to make restitution. This restitution made, the interest in the land remains as before,—ten fifty sevenths in the new subscribers, and fourth-seven fifty sevenths in the

eight members of the old syndicate.  They will share in the final distribution of the proceeds of the land in those proportions. This is the effect of the opinion reforming the decree and directing the accounting and distribution.  As but three members of the old syndicate were parties to the bill, there is a decree against them for their proportion of the profit divided.  Those who were not parties are made to account for their respective shares of the profit, as a condition of sharing in the final distribution. If the land shall have increased in value during these years of litigation, they may yet realize on their actual investment; what they will and ought to lose is the unlawful profit made in the sale to the new syndicate.  The motion for rehearing is denied.

In consideration of the delay of the plaintiffs in asserting their rights, the court has concluded that it will be equitable to charge the defendants with interest on the recovery against them only from June 1, 1909, the date of filing the bill, instead of from the date of conveyance as directed in the former opinion; and the interest ordered to be charged by the auditor in the accounting directed in paragraph (b) will also be charged from June 1, 1909.

In these respects the former opinion is amended, and the court below in entering the decree ordered will be governed thereby.